# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GENE LAFLEUR, individually
and on behalf of all others
similarly situated,

        Plaintiff,        Case No.

v.        Hon.

URS MIDWEST, INC.,

        Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

Brook S. Lane, Esq.,
FAIR WORK, P.C.
*EDMI Admission Pending*
192 South Street, Suite 450
Boston, MA 02111
Tel: (617) 607-3260
Fax: (617) 488-2261
brook@fairworklaw.com

---

## CLASS COMPLAINT AND JURY DEMAND

1

# INTRODUCTION

1. Plaintiff Gene LaFleur, on behalf of himself and all others similarly situated, brings this action against Defendant URS Midwest, Inc. ("URS"). In support thereof, Plaintiff alleges as follows:

# NATURE OF THE ACTION

2. URS is a trucking company.

3. Plaintiff worked for URS as a truck driver from approximately 2016 to 2025.

4. URS has subjected Plaintiff and other drivers to certain practices and policies that are illegal and caused them to suffer damages as a result.[1]

    a. URS has violated 49 U.S.C. § 14102 and the Truth-in-Leasing regulations ("TIL"), 49 C.F.R. § 376, *et seq.*, because the company entered into leases with Plaintiff and other similarly situated drivers and failed to adhere the terms of the leases, the leases did not include mandatory terms and disclosures, and the company took illegal deductions from the compensation it paid Plaintiff and other similarly situated drivers.

---

[1] Unless otherwise noted, the relevant time period for each class, collective, and claim set forth herein is the applicable statute of limitations.

5. On behalf of himself and all other similarly situated drivers, Plaintiff seeks damages, liquidated damages, interest, injunctive relief, attorneys' fees and costs, and all other allowable relief.

## PARTIES

6. Plaintiff is an adult resident of Winder, Georgia.

7. URS is a corporation located in Romulus, Michigan.

## JURISDICTION AND VENUE

8. The Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

9. The Court has personal jurisdiction over URS because it is a Michigan corporation, is registered with the Secretary of State of Michigan, maintains corporate offices in Romulus, Michigan, and transacts business in the State of Michigan.

10. The Court has personal jurisdiction over Plaintiff and other drivers because they have worked for URS in Michigan.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims set forth in this complaint occurred in this judicial district.

## FACTS

12. URS is authorized by the U.S. Department of Transportation to transport property in interstate commerce as a motor carrier under 49 U.S.C. §§ 13901, 13902, *et seq*.

13. URS provides customers with motor vehicle transportation services of goods and/or freight for compensation.

14. URS engages drivers to perform the transportation services that the company provides to its customers.

15. URS classifies certain drivers as independent contractors, and they are known as "Contractors."

16. URS requires Contractors to sign a document titled, "Independent Contractor Service Agreement" ("ICSA").

17. The ICSA is a generic agreement that URS uses with all Contractors.

18. URS presents the ICSA to prospective Contractors on a take-it-or-leave-it basis, without the opportunity for negotiation.

19. Plaintiff sign an ICSA with URS or about May 11, 2017.

20. Plaintiff performed transportation services for URS as a Contractor from on or about May 11, 2017 until in or about March 2025.[2]

---

[2] Plaintiff's ICSA is attached as Exhibit 1.

21. URS paid Plaintiff based on a percentage of the gross revenue from each shipment he completed.

22. Under federal law, motor carriers, such as URS, may transport property in equipment that they do not own if the equipment is subject to a written lease agreement that meets certain requirements in the TIL regulations.

23. The purpose of the TIL regulations is "to eliminate or reduce opportunities for skimming and other illegal or inequitable practices." *Lease and Interchange of Vehicles*, 131 M.C.C. 141, 142 (1979).

24. The ICSA constitutes a "lease" under the TIL regulations, 49 C.F.R. § 376.2(e), because it concerns the leasing of equipment with which transportation subject to regulation by the Secretary of Transportation would be performed.

25. URS violated the TIL regulations in several ways.

26. First, leases subject to the TIL regulations must specify any amount that will be charged back to a driver for insurance. *See* 49 C.F.R. § 376.12(j).

27. URS violated 49 C.F.R. § 376.12(j) because the ICSA states that URS would take chargebacks from Plaintiff's compensation in ranges of amounts for insurance, instead of specific amounts, such as, without limitation, $625 to $750 per month for "Casualty Auto Liability" insurance and from 1.75% to 6.0% of transport revenue for "Cargo Liability" insurance depending on a Contractor's "experience rating." *See* Ex. 1, Schedule A, ¶ 5.

5

28. URS also violated 49 C.F.R. § 376.12(j) because the company took chargebacks from Plaintiff's compensation for insurance policies in varying amounts that are not specified in the ICSA.

29. For example, during one or more weeks, URS deducted $346.15 for "Liability Insurance" and deducted amounts ranging from $68.25 to $330.75 for "Cargo Insurance."

30. Second, leases subject to the TIL regulations must include a recitation as to how a motor carrier will calculate the amount of any item that will be deducted from a driver's compensation. *See* 49 C.F.R. § 376.12(h).

31. The URS violated 49 C.F.R. § 376.12(h) because the ICSA does not specify how URS would determine which percentage of "Transport Revenue" it would charge back to Plaintiff's compensation for "Cargo Liability" insurance, what an "experience rating" was for purposes of calculating charge backs for "Cargo Liability" insurance, how URS calculated Plaintiff's "experience rating," or how Plaintiff's "experience rating" affected the percentage that URS would charge back to him for "Cargo Liability" insurance.

32. Third, leases subject to the TIL regulations must disclose any deductions or chargeback that a motor carrier will take from a driver's compensation. *See* 49 C.F.R. § 376.12(h).

33. URS violated 49 C.F.R. § 376.12(h) because the company took deductions or chargebacks from Plaintiff's compensation that are not disclosed properly, or at all, in the ICSA.

34. For example, during one or more weeks, URS took deductions for "Hylant Insurance."

35. The ICSA does not disclose that URS would take a deduction or chargeback from Plaintiff's compensation for "Hylant Insurance."

36. Fourth, the TIL regulations bar carriers from requiring drivers to purchase or rent products, equipment, or services from them. *See* 49 C.F.R. § 376.12(i).

37. URS violated 49 C.F.R. § 376.12(i) because it required Plaintiff to purchase insurance from the company. *See* Ex. 1 at § 9(a).

38. Fifth, the TIL regulations require trucking companies to adhere to the terms of any leases that are governed by their terms. *See* 49 C.F.R. § 376.12.

39. URS violated 49 C.F.R. § 376.12 because it took charge backs from Plaintiff's compensation for certain items that exceeded the amounts the ICSA states would be taken for those items.

40. For example, The ICSA states that URS will deduct a "monthly communication fee of $20/month," which amounts to $240 a year. *See* Ex. 1, Appendix A.

41. Rather than adhering to the ICSA and taking $20 in deductions each month from Plaintiff's compensation, URS deducted $10 from his compensation on a biweekly basis, which exceeds $20 per month, or $240 a year.

42. Sixth, when a driver's compensation is based on a percentage of the gross revenue for a shipment, the driver's lease must specify that the carrier will give the driver a copy of the rated freight bill or another form of documentation that contains the same information that would appear on a rated freight bill. *See* 49 C.F.R. § 376.12(g).

43. URS violated 49 C.F.R. § 376.12(g) because it paid Plaintiff a percentage of the gross revenue from shipments he completed but the ICSA does not state that URS would give Plaintiff a copy of the rated freight bill or another form of documentation that contains the same information that would appear on a rated freight bill and URS did not give Plaintiff such documentation or other documents from which rates and charges were computed.

44. Because URS failed to comply with 49 C.F.R. § 376.12(g), Plaintiff did not have documentation that could be used to verify that URS calculated his compensation correctly.

45. Plaintiff and other Contractors have suffered damages as a result of URS's failure to adhere to the TIL regulations and perform as required by them, such as, without limitation, lost compensation and out-of-pocket expenses.

## CLASS ALLEGATIONS

46. Pending modifications necessitated by discovery, Plaintiff brings his claims against URS pursuant to Fed. R. Civ. P. 23 on behalf of himself and the following class of individuals (the "Class"):

> All individuals who have worked as Contractors for URS during the applicable statutory time period.

47. The Class may be maintained as a class action under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

48. Plaintiff and other Contractors have the same or similar claims against URS because the ICSA is a generic document that URS requires all Contractors to sign, and the company subjects all Contractors to the same or similar practices or policies to which it subjected Plaintiff.

49. The proposed class is so numerous that joinder of all Contractors is impracticable. On information and belief, the class is comprised of more than 300 individuals. Plaintiff does not know the exact size because that information is currently within the exclusive control of URS.

50. There are issues of law or fact common to the class that predominate over any individual issues that might exist. Common issues of law and fact include, without limitation, the terms of the contracts between URS and Contractors and the amounts and nature of deductions or chargebacks that URS took from Contractors' compensation.

51.     Plaintiff's claims are typical of the claims of potential class members. URS operates in a highly regulated industry that requires it to maintain standard operating procedures and uniform policies and practices and to adhere to laws and regulations governing motor carriers. The damages of Plaintiff and all other class members can readily be calculated from URS's business records.

52.     Plaintiff will fairly and adequately protect and represent the interests of the class. Indeed, he has no known conflict of interest with the class and Plaintiff retained the undersigned counsel, who are well experienced in class actions involving individuals working in the trucking industry.

53.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative—numerous identical lawsuits bringing similar or identical causes of action—would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for URS. Moreover, some class members—particularly current Contractors—may be reluctant to bring their claims individually for fear of retaliation by URS.

54. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the TIL regulations to individuals whose claims may be too small to warrant the expense of litigation.

55. The Class will not be difficult to manage due to the uniformity of claims among the class members and the amenability of their claims to representative testimony and documentary evidence.

## CLAIMS FOR RELIEF

## COUNT I: TIL REGULATIONS CLAIMS

56. Plaintiff re-alleges and incorporates by reference all previous paragraphs of the Complaint as if fully rewritten herein.

57. As alleged, URS has violated the TIL regulations, 49 C.F.R. § 376, *et seq*.

58. Plaintiff asserts his TIL claims against URS on behalf of himself and the other members of the Class.

59. As a result of URS's violations of the TIL regulations, Plaintiff is entitled to declaratory judgment that the ICSA violates 49 C.F.R. § 376.12.

60. As a result of URS's violations of the TIL regulations, Plaintiff is entitled to enjoin the company from attempting to enforce the ICSA, and similar agreements.

61. As a direct and proximate result of URS's substantial and material failure to comply with the TIL regulations, the company has violated the rights of Plaintiff and the other members of the Class and caused them to suffer damages in an amount to be determined at trial.

62. On behalf of himself and all other members of the Class, Plaintiff seeks reimbursement for any and all unlawful deductions taken from Contractors' compensation, reimbursement for any and all amounts improperly retained, appropriate ancillary relief, injunctive relief, interest, attorneys' fees, costs, and all other relief to which they are entitled.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court grant the following relief:

a. Certification of the Class under Fed. R. Civ. P. 23;

b. Designation of Plaintiff as representative for the Class;

c. Designation of undersigned counsel as counsel for the Class;

d. An order enjoining URS from violating the TIL regulations;

e. All lost compensation and out-of-pocket expenses suffered by Plaintiff and the class;

f. An award to Plaintiff and the other members of the Class of maximum damages, liquidated damages, and penalties available under the TIL regulations;

g. Interest;

h. Attorneys' fees and costs, as provided for by 49 U.S.C. § 14704(e);

i. Any other relief that the Court deems just and proper.

>Respectfully submitted,
>
>GENE LAFLEUR, individually and on behalf all others similarly situated,
>
>By his attorneys,
>
> /s/ Noah S. Hurwitz
>Noah S. Hurwitz (P74063)
>Attorney for Plaintiffs
>340 Beakes St., Suite 125
>Ann Arbor, MI 48104
>(844) 487-9489
>
>Hillary Schwab, Esq.,
>*Pro Hac Vice Motion Impending*
>Brook S. Lane, Esq.,
>*Pro Hac Vice Motion Impending*
>FAIR WORK, P.C.
>192 South Street, Suite 450
>Boston, MA 02111
>Tel:  (617) 607-3260
>Fax:  (617) 488-2261
>hillary@fairworklaw.com
>brook@fairworklaw.com
>
>Dated: June 02, 2025

UNTIED STATES DISTRICT COURT
EASTERN DISCTRICT OF MICHIGAN
SOUTHER DIVISION

GENE LAFLEUR, individually
and on behalf of all others
similarly situated,

        Plaintiff,

v.

URS MIDWEST, INC.,

        Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

Brook S. Lane, Esq.,
FAIR WORK, P.C.
*EDMI Admission Pending*
192 South Street, Suite 450
Boston, MA 02111
Tel: (617) 607-3260
Fax: (617) 488-2261
brook@fairworklaw.com

---

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff James Farkas, by and through his attorneys, HURWITZ LAW PLLC, hereby demand a jury trial in the above-captioned matter for all issues so triable.

                                                            Respectfully submitted
                                                            HURWITZ LAW PLLC

                                                            */s/ Noah S. Hurwitz*
                                                            Noah S. Hurwitz (P74063)
                                                            Attorney for Plaintiffs
                                                            340 Beakes St. Ste. 125
                                                            Ann Arbor, MI 48104
                                                            (844) 487-9489

Dated: June 02, 2025