UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENE LaFLEUR,

Plaintiff,

v.

URS MIDWEST, INC.,

Defendant.

Case No. 2:25-cv-11633

Honorable Susan K. DeClercq
United States District Judge

______________________________/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STAY AND MOTION TO COMPEL ARBITRATION (ECF No. 13), COMPELLING ARBITRATION ON AN INDIVIDUAL BASIS UNDER GEORGIA LAW, AND STAYING THE CASE PENDING ARBITRATION**

Before this Court is Defendant URS Midwest, Inc.'s motion to stay the case and compel arbitration in accordance with an employment contract that requires individual arbitration for all claims or disputes relating to the contract. Plaintiff Gene LaFleur argues that the arbitration provisions are unenforceable under federal and governing state law, but if LaFleur is compelled to arbitrate, the arbitrator should decide whether LaFleur can assert class claims. This Court finds that Georgia law applies, under which the arbitration provision is enforceable. So, the motion will be granted and the case will be stayed pending arbitration under Georgia law. Further, whether LaFleur may bring a class claim in arbitration is a threshold issue for this

Court to determine, and because the Parties explicitly agreed to waive class arbitration, this Court will compel individual arbitration.

## I. BACKGROUND

URS Midwest, Inc. ("URS Midwest") is a Michigan-based trucking company engaged in interstate commerce by "provid[ing] customers with motor vehicle transportation services of goods and/or freight for compensation," as authorized the United States Department of Transportation. ECF No. 1 at PageID.2–4; *see also* ECF No. 13 at PageID.112. URS Midwest employs drivers as independent contractors ("Contactors"), including LaFleur, through Independent Contractor Service Agreements ("ICSAs"). ECF Nos. 1 at PageID.4; 13 at PageID.112–13.

On May 11, 2017, LaFleur—a resident of Georgia—signed an ICSA and became a Contractor for URS Midwest. ECF Nos. 1 at Page ID.3–4; 13 at PageID.113. That ICSA contained an arbitration provision. ECF No. 1-1 at PageID.29; *see also* ECF No. 13-2 at PageID.146. The ICSA also provided that it "shall be construed according to the laws of the State of Michigan and without regard to conflict of law principles." ECF Nos. 1-1 at PageID.29; 13-2 at PageID.146.

But on February 13, 2022, the Parties agreed to an addendum to the ICSA ("the Addendum"), which "deleted in [their] entirety" the arbitration and governing law provisions in the ICSA. ECF No. 13-2 at PageID.172, 175–76. The arbitration

provision (referred to as "Section 15") was replaced, in pertinent part, with the following:

> 15. Arbitration: Any claim, dispute or controversy including, but not limited to the interpretation of any federal statutory or regulatory provisions purported to be encompassed by this Agreement; any alleged breach of this Agreement; any claim arising out of the relationship between the parties; or the enforcement of any statutory rights emanating or relating to this Agreement **shall be resolved on an individual basis exclusively between Contractor and [URS Midwest] by final and binding arbitration to be held in Wayne County, Michigan, or another location agreed to by the parties,** before the American Arbitration Association ("AAA"), provided that the arbitration provisions in this Section 15 do not apply to Contractors domiciled in or whose operations are principally localized in California, Massachusetts, or New Mexico. The Parties agree that this Section 15 is governed by the Federal Arbitration Act . . . ("FAA") and that this Agreement is not exempt from the FAA. If the FAA is held not to apply, this Section 15 will be governed by the arbitration laws of the state in which Contractor is domiciled or in which Contractor's operations are principally localized.
>
> * * *
>
> (e) The Parties agree that no class, collective, consolidated, or representative arbitration of claims shall be allowed, and the Parties waive their right to participate in a class, collective, consolidated, or representative arbitration. If a court or arbitrator nevertheless allows a class, collective, consolidated, or representative arbitration, contrary to the Parties' intent, this Section 15 shall be null and void in its entirety with respect to the pending dispute, any arbitration award under it with respect to the pending dispute shall be null and void, and any such dispute between the Parties shall be resolved in court consistent with [the governing law provision]. If this [subsection] is determined to be unenforceable, the Parties agree that it shall not be severable from the other provisions of this Section 15, unless it is determined that the arbitration will proceed on an individual basis.

ECF No. 13-2 at PageID.176–77 (all caps omitted). The governing law provision was replaced with the following:

> (a) Governing Law. With the exception of Section 15, this Agreement, as well as any claim or dispute arising from or in connection with this Agreement, or with respect to any aspect of the relationship between the Parties, shall be construed according to and governed by the laws of the United States and the State of Michigan, without regard to conflict of law rules of that or any other jurisdiction. Unless the arbitration provisions of Section 15 apply, the Parties agree that any claim or dispute arising from or in connection with this Agreement, as well as any claim or dispute arising from or in connection with this Agreement, or with respect to any aspect of the relationship between the Parties, whether under federal, state, local, or foreign law (including but not limited to 49 C.F.R. Part 376), must be brought exclusively in the state or federal courts serving Wayne County, Michigan. The Parties consent to the jurisdiction of these courts.
>
> (b) Wavier [sic]. Contractor and Contractor's workers waive any right to initiate, join (i.e., opt in to), remain in (i.e., not opt out of), or otherwise participate in any class action, collective action, consolidated action, or representative action brought against [URS Midwest], including but not limited to such actions brought under state or federal law and those arising under the Fair Labor Standards Act.

*Id.* at PageID.175–76 (all caps omitted).

LaFleur worked for URS Midwest as a Contractor until approximately March 2025. ECF No. 1 at PageID.4. On June 2, 2025, LaFleur filed a putative class action complaint against URS Midwest, alleging that the ICSAs functioned as leases beholden to the federal Truth-in-Leasing (TIL) regulations, which URS Midwest violated by failing to: adhere to certain ISCA terms, include certain mandatory terms

and disclosures in the ICSAs, and taking illegal deductions from LaFleur and other drivers' pay. *See id.* at PageID.2.

On September 29, 2026, URS Midwest moved to stay the case and compel arbitration, arguing that the ICSA and the Addendum contain an explicit agreement to arbitrate LaFleur's claims under the Federal Arbitration Act (FAA) or Michigan law. ECF No. 13. The motion is fully briefed, ECF Nos. 14; 16, and this Court will decide the motion on the papers, finding that a hearing is not necessary. *See* E.D. Mich. LR 7.1(f)(2).

## II. LEGAL STANDARD

A party moving to compel arbitration must prove the existence of a valid arbitration agreement. *Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 798 (6th Cir. 2023). The party that opposes arbitration must then "show a genuine issue of material fact as to the validity of the agreement to arbitrate," which may be shown on legal or equitable grounds for revoking a contract. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *see also* 9 U.S.C. § 2. When deciding a motion to compel arbitration, courts "must consider whether: (1) a valid arbitration agreement exists between the parties; (2) the disputes fall within the scope of the agreement; (3) Congress intended for certain federal statutory claims to be nonarbitrable; and (4)" whether claims that fall outside the scope of the agreement, if any, will be stayed pending arbitration. *Crockett v. Audi of Am., LLC*, 728 F. Supp.

3d 600, 605 (E.D. Mich. 2024); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

## III. DISCUSSION

As a threshold matter, the Parties do not appear to dispute the validity of the Addendum to the ICSA, which contains the operative agreement to be bound by the arbitration provision. *See generally* ECF Nos. 1; 1-2 (relying on and attaching the ICSA to bring claims of TIL violations); 13; 13-2 (relying on and attaching the ICSA and the Addendum to argue for arbitration); 14 (relying on the ICSA and the Addendum to argue against arbitration). Thus, URS Midwest has proven the existence of a valid arbitration agreement. *See Bazemore*, 74 F.4th at 798.

Instead, the Parties disagree about which laws govern the arbitration provision. LaFleur argues that the FAA and Georgia law govern the arbitration provision, and that under both, the provision is unenforceable. ECF No. 14 at PageID.223–35. URS Midwest argues that this Court need not decide whether the FAA applies because the agreement is enforceable under Michigan law. ECF No. 13 at PageID.115–16. For the reasons provided below, this Court finds that the FAA does not apply but that the agreement is enforceable under Georgia law.

### A. Applicability of the Federal Arbitration Act

LaFleur contends that the FAA governs the arbitration provision, but that the arbitration provision is unenforceable under the FAA's exemption for interstate

transportation workers. ECF No. 14 at PageID.223, 227. URS Midwest "acknowledges the possibility that the Court may find the FAA does not apply" because of that exemption but nevertheless argues that this Court need not determine whether the FAA applies because the arbitration provision is enforceable under state law—specifically Michigan law. ECF No. 13 at PageID.115–16. This Court will not compel arbitration under the FAA, finding that the FAA does not apply because LaFleur is exempt under § 1 as a transportation worker.

In 1925, Congress enacted the Federal Arbitration Act to "compel[] judicial enforcement of a wide range of written arbitration agreements." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001); *see also* 9 U.S.C. § 2; *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 253 (2024) ("Congress enacted the FAA in 1925 to override the longstanding refusal of courts to enforce arbitration agreements."). The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The Court begins with the FAA analysis because although courts may rely on general state contract principles, "state law is preempted to the extent it" renders certain claims unenforceable or otherwise hinders the objectives of the FAA. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019).

But "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are exempt from the FAA's reach. 9 U.S.C. § 1. The United States Supreme Court has clarified that this language exempts "only contracts of employment of transportation workers." *Cir. City Stores*, 532 U.S. at 119. The exemption applies with equal force to independent contractors. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 121 (2019).

Here, the ICSA and the Addendum are transportation worker employment contracts exempt from the FAA's application. *See* 9 U.S.C. § 1. Indeed, URS Midwest is a Michigan-based trucking company authorized by the U.S. Department of Transportation, and LaFleur was employed as a truck driver from Georgia to transport goods for URS Midwest. *See* ECF Nos. 1 at PageID.2–4; 13 at PageID.112–13; *see also New Prime Inc.*, 586 U.S. at 109, 121 (holding that an independent contractor working as a driver for an interstate trucking company was exempt from the FAA's authorization of a court to enter an order compelling arbitration). Therefore, the FAA does not apply to LaFleur, and this Court cannot compel arbitration therein.[1] *See Peter v. Priority Dispatch, Inc.*, 681 F. Supp. 3d 800,

[1] URS Midwest argues this Court need not make this determination because regardless of whether the FAA applies, LaFleur is subject to arbitration under Michigan law. ECF No. 13 at PageID.115–16. In an unpublished opinion, one court in this District found "that it need not resolve the Section One exemption issue here in the first instance because, even if the exemption applied . . . and she could not be compelled to arbitrate *under the FAA*, she would still be subject to arbitration *under state law*." *McBrantie v. Amazon.com, Inc.*, No. 24-12914, 2025 WL 2237367, at *5

801–03 (S.D. Ohio 2023) (denying a motion to compel under the FAA because independent contractors working as airline cargo drivers were exempt under § 1).

**B. Governing State Law**

However, exemption under the FAA does not preclude parties from being subject to arbitration under state law "if the parties unambiguously intended to displace the FAA with state rules of arbitration." *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg*, 748 F.3d 708, 716 (6th Cir. 2014); *see also Walker v. Amazon Logistics, Inc.*, 809 F. Supp. 3d 749, 759 (N.D. Ohio 2025) (finding that even if the FAA's exemption applies, arbitration could still be compelled "if the parties agreed to apply state law that would also compel arbitration"); *Green v. U.S. Xpress Enters., Inc.*, 434 F. Supp. 3d 633, 640–41 (E.D. Tenn. 2020) (finding that "the general consensus appears to be that state arbitration law governs arbitrability if the FAA does not apply") (cleaned up); *McKinnes v. ATX Inc.*, No. 2:19-cv-12748, 2020 WL 13499605, at *4 (E.D. Mich. Dec. 14, 2020) ("If the FAA is deemed inapplicable, but an arbitration agreement contains an express

---

(E.D. Mich. May 20, 2025), *report and recommendation adopted by* 2025 WL 2048328 (E.D. Mich. July 22, 2025). However, the Supreme Court has held that the district court should determine whether the FAA applies. *See New Prime Inc.*, 586 U.S. at 111 ("[A] court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration."). Given that *McBrantnie* is not binding precedent and that Supreme Court precedent suggests this Court should make such a determination, this Court will find that the section one exemption applies, and that it cannot compel arbitration under the FAA.

provision invoking state law, then state law determines whether the arbitration agreement applies.”).

Here, the Parties agreed to the following provision:

> The Parties agree that this Section 15 is governed by the Federal Arbitration Act . . . (“FAA”) and that this Agreement is not exempt from the FAA. If the FAA is held not to apply, this Section 15 will be governed by the arbitration laws of the state in which Contractor is domiciled or in which Contractor’s operations are principally localized.

ECF No. 13-2 at PageID.176. Therefore, the Parties expressly invoked alternative state law to govern arbitration where, as here, the court has determined that the FAA does not apply. *See Savers Prop.*, 748 F.3d 716; *see also Walker*, 809 F. Supp. 3d at 759. Consequently, this Court must determine whether the arbitration agreement is enforceable under the state laws of LaFleur’s domicile or where his “operations are principally localized.”

LaFleur is domiciled in Georgia, ECF No. 1 at PageID.3, and neither Party disputes that the arbitration provision contemplates Georgia law. But LaFleur argues that the provision is not enforceable because the Parties did not specifically initial the arbitration provision in the Addendum, as required under the Georgia Arbitration Code (GAC). ECF No. 14 at PageID.231. URS Midwest concedes that Georgia law can apply but argues that the disjunctive “or” in the provision means that the agreement may also be enforceable under the laws of the state where LaFleur’s

operations are principally localized, which, URS Midwest contends, is Michigan. ECF No. 16 at PageID.250–51, 254.

"Any contract relating to terms and conditions of employment" is not enforceable under the GAC "unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement." GA. CODE ANN. § 9-9-2(c)(9) (West). But this exception is narrow and does not apply to independent contractors. *See jOjA Partners, LLC v. Abrams Props., Inc.* 585 S.E.2d 168, 171–72 (Ga. Ct. App. 2003) (holding that § 9-9-2(c)(9) does not apply to independent contractor relationships); *see also Brown v. Morgan & Morgan Atlanta, PLLC*, No. A26A1141, 2026 WL 1883168, at *6 (Ga. Ct. App. June 30, 2026) (same).

Here, the Parties explicitly state that they had an independent contractor relationship. *See* ECF Nos. 1 at PageID.4; 7 at PageID.58. In fact, the main agreement to which the Addendum applies is titled "Independent Contractor Service Agreement." ECF Nos. 1-1 at PageID.17; 13-2 at PageID.134. Thus, § 9-9-2(c)(9) does not apply, and the Parties' arbitration agreement is enforceable under Georgia law. *See jOjA Partners*, 585 S.E.2d at 171–72; *see also Parker v. Ciara Grp., Inc.*, No. 07-13498, 2007 WL 9752777, at *3 (E.D. Mich. Dec. 18, 2007) (applying Georgia law and the holding in *jOjA Partners* to find that § 9-9-2(c)(9) did not apply to the independent contractor relationship between the parties, making the arbitration clause enforceable).

Given that LaFleur argues that Georgia law governs—albeit for the mistaken reason that this would lead this Court to find the arbitration agreement unenforceable—and that URS Midwest concedes that there "are two potentially applicable state laws," including Georgia, *see* ECF No. 16 at PageID.250, this Court sees no need to determine whether the arbitration agreement is enforceable under the laws of the state where LaFleur's operations are principally localized, wherever that may be. At bottom, "[t]he first principle that underscores all of our arbitration decisions" is that "arbitration is strictly a matter of consent." *Lamps Plus*, 587 U.S. at 184 (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010)) (cleaned up). And here, the Parties clearly consented to apply the law of the state of LaFleur's domicile, Georgia. Therefore, this Court finds that a valid arbitration agreement exists that is governed by Georgia law. *See Byrider*, 228 F.3d at 714.

As to the remaining factors for considering a motion to compel, this Court finds that the Parties' agreement to arbitrate encompasses LaFleur's allegations of TIL violations, because the agreement states that it applies broadly: it reaches "[a]ny claim, dispute or controversy including, but not limited to the interpretation of any federal statutory or regulatory provisions purported to be encompassed by this Agreement." ECF No. 13-2 at PageID.176; *see also Byrider*, 228 F.3d at 714. Finally, the Parties have presented no evidence of Congressional intent for TIL "claims to be nonarbitratable," so this Court will grant URS Midwest's motion to

compel arbitration and stay the case pending resolution of arbitration under Georgia law. *See Byrider*, 228 F.3d at 714; *see also* GA. CODE ANN. § 9-9-6(a) (West) (requiring the court to stay the case pending the compelled arbitration).

**C. Class Arbitration**

Briefly, the Parties dispute whether this Court should compel arbitration on an individual basis or leave the issue of class arbitration for the arbitrator to decide. ECF Nos. 13 at PageID.120–21; 14 at PageID.235–36. According to the Supreme Court, gateway substantive issues are "question[s] of arbitrability" reserved "for judicial determination[,] [u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The Supreme Court "has not yet decided whether the availability of class arbitration is a question of arbitrability." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013). At best, the Supreme Court held in a plurality opinion that the question of what kind of arbitration proceeding the parties agreed to—be it class or individual—was a matter of interpretation for the arbitrator to decide. *Green Tea Fin. Corp. v. Bazzle* 539 U.S. 444, 452–53 (2003) (plurality op.). But notably, the plurality decision was premised, in part, on the fact that the contract at issue did not expressly prohibit or permit class arbitration. *See id.* at 450, 452.

Here, the Parties "clearly and unmistakably provide" an express waiver of class arbitration. *See* ECF No. 13-2 at PageID.177 (stating that if a court or arbitrator

nevertheless allowed class arbitration, this would be "contrary to the Parties' intent" and would make null and void the arbitration provision as to the pending dispute). Thus, there is no issue of contract interpretation about the Parties' intent to arbitrate individually. *See Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 877 (11th Cir. 2005); *see also Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2016). Therefore, this Court will decide this issue in accordance with the Parties' intent by compelling arbitration on an individual basis. *Cf. Fed. Nat'l Mortg. Assoc. v. Prowant*, 209 F. Supp. 3d 1295, 1311–12 (N.D. Ga. 2016) ("[Thus], regardless of whether class availability is procedural or substantive, if the arbitration agreement delegates all questions of arbitrability to the arbitrator, the issue is for the arbitrator, not the court.").

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant URS Midwest, Inc.'s Motion to Stay and Motion to Compel Arbitration, ECF No. 13, is **GRANTED**.

Consequently, it is **ORDERED** that the Parties are **COMPELLED** to arbitrate on an individual basis under Georgia law.

It is further **ORDERED** that this case is **STAYED** pending the resolution of arbitration.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: August 13, 2026